Tyrek Hgts. Erectors, Inc. v WDF, Inc. (2019 NY Slip Op 09386)





Tyrek Hgts. Erectors, Inc. v WDF, Inc.


2019 NY Slip Op 09386


Decided on December 26, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 26, 2019

Friedman, J.P., Webber, Kern, Moulton, JJ.


10665 650690/12

[*1] Tyrek Heights Erectors, Inc., Plaintiff-Appellant,
v
WDF, Inc., et al., Defendants-Respondents, New York City Transit Authority, et al., Defendants.


The Law Office of Joshua D. Spitalnik, P.C., Roslyn (Joshua D. Spitalnik of counsel), for appellant.
Kaufman, Dolowich & Voluck, LLP, Woodbury (Andrew L. Richards of counsel), for respondents.



Order, Supreme Court, New York County (Charles E. Ramos, J.), entered on or about February 5, 2018, which, insofar as appealed from as limited by the briefs, granted defendants' motion for partial summary judgment dismissing the amended complaint's nineteenth cause of action for bad-faith interference with plaintiff's performance of certain subcontracts and twentieth cause of action for prime contractor defendant WDF's contractual failure to present plaintiff's claim for additional compensation to defendant New York City Transit Authority (NYCTA), unanimously modified, on the law, to deny so much of defendants' summary judgment motion as sought dismissal of plaintiff's 19th cause of action for damages relating to the "Five Stations Project," and otherwise affirmed, without costs.
Plaintiff has met its burden of pointing to evidence raising triable issues of fact as to whether WDF engaged in intentional misconduct by willfully interfering with plaintiff's timely performance of its subcontracts. It is undisputed that the subject projects suffered extensive delays when a high-voltage cable owned by the Long Island Power Authority (the LIPA cable) was discovered running alongside the subway line on which the work was being performed. Subsequent to this development, an internal WDF claim position document authored by its then-COO states that it had been "the logic of the team to delay doing work and try to blame it on the LIPA issue." Other documentary evidence indicates that WDF "deliberate[ly] delayed" work by not provid[ing] enough manpower to perform work when power [on the LIPA cable] is off." Another of WDF's COOs likewise confirmed in deposition testimony that WDF would sometimes "minimize the workforce," reducing the amount of work being done when the LIPA cable was de-energized. Record evidence indicates that WDF took advantage of the LIPA cable issues and other delays "to make up for WDF's underbid of the Projects."
Against this evidence of willful delay by WDF, the evidence of delays to plaintiff's performance of its subcontract work, at least viewed in the light most favorable to plaintiff, takes on a hue of being willfully inflicted. Thus, WDF's Five Stations Project Superintendent confirms that, contrary to industry custom, WDF refused to hire a surveyor to chart out areas where concrete needed to be "chopped" preliminary to structural work by plaintiff. Instead, WDF insisted on doing the surveying work itself, leading to "many errors in the chopping" and consequent delays for plaintiff. WDF also breached a contractual requirement to provide plaintiff with fixed "platform shields" for performance of elevated work, instead supplying it with less efficient "man-lifts," and, even then, at times removing the man-lifts without explanation. WDF also, without explanation, and, according to the Three Stations Project [*2]Manager, "arbitrar[il]y," excluded plaintiff from the work staging area, hindering its ability to store equipment and materials. Finally, the Three Stations Project Manager testified that he objected to WDF's
issuance to plaintiff of notices of default, calling them "not warranted," and was subsequently punished by WDF by being "put in the cafeteria for a month."
Hence, we find that there is a triable issue of fact as to whether WDF "acted in bad faith and with deliberate intent delayed the plaintiff in the performance of its obligation," which, if demonstrated at trial, would remove plaintiff's claims under the 19th cause of action from the ambit of the contractual no-delay damages clause (Kalisch-Jarcho, Inc. v City of New York , 58 NY2d 377, 386 [1983]). We accordingly modify to deny so much of defendants' summary judgment motion as sought dismissal of plaintiff's 19th cause of action relating to the Five Stations Project. We note that, at this juncture, we leave undisturbed that portion of the motion court's decision to hold in abeyance the portion of defendants' motion seeking dismissal of plaintiff's claims relating to the "Three Stations Project," pending resolution of WDF's claims against NYCTA, since it is still possible that the claim may be impacted or superseded by the outcome of the WDF-NYCTA dispute.
There is no evidence that plaintiff ever submitted any delay damages claim relating to its work on the Five Stations Project. As such, plaintiff has failed to satisfy a condition precedent for recovery under its 20th cause of action for WDF's alleged breach of its contractual duty to submit plaintiff's delay claims to NYCTA (see A.H.A. Gen. Constr. v New York City Hous. Auth. , 92 NY2d 20, 30-31 [1998]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: DECEMBER 26, 2019
CLERK